***********
Upon review of the competent evidence of record with reference to the errors assigned, and finding no good grounds to receive further evidence or to rehear the parties or their representatives, the Full Commission upon reconsideration of the evidence affirms with minor modifications the Opinion and Award of the Deputy Commissioner.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing before the Deputy Commissioner as:
 STIPULATIONS
1. The Industrial Commission has jurisdiction over the subject matter of this case, the parties are properly before the Commission, and the parties were subject to and bound by the provisions of the North Carolina Workers' Compensation Act at all relevant times.
2. Defendant was a duly qualified self-insured with Risk Enterprise Management Ltd., as the third-party administrator.
3. The employee-employer relationship existed between the parties at all relevant times.
4. The parties submitted the following documentary evidence:
a. Stipulated Exhibit 1 Medical Records, thirty-eight pages;
b. Stipulated Exhibit 2 I.C. Forms; and
c. Stipulated Exhibit 3 Plaintiff's Discovery Responses.
 ***********
Based upon all of the competent evidence adduced from the record and the reasonable inferences therefrom, the Full Commission makes the following:
 FINDINGS OF FACT
1. At the time of the hearing before the Deputy Commissioner, plaintiff was a 53 year old female high school graduate. She had prior work experience in retail clothing sales and was trained as a massage therapist. Plaintiff had a history of a number of ankle fractures or injuries in her teens and childhood.
2. Plaintiff began working for defendant on 9 January 2002 as a reservation agent trainee. She attended training sessions from 3:30 p.m. until midnight, five days per week. The training period lasted for three weeks. The first week of training involved use of the computer system, role-play and technical aspects of the job. The second week focused on sales techniques, and the last week involved on-the-job training.
3. Plaintiff was paid a base wage of $8.10 per hour for 40 hours of work per week during the training. After completing training, plaintiff would become eligible for commission pay in addition to the base rate.
4. For the ten-day period between her start of employment and the injury giving rise to this claim, plaintiff earned $527.53. This calculates to an average weekly wage of $369.25.
5. For the fifty-two week period prior to the date of the injury giving rise to this claim, a similar employee earned an average weekly wage of $404.88, with a resulting compensation rate of $269.93 per week.
6. During the initial ten days of employment, plaintiff regularly sat with her right leg extended and her right foot propped on the backdrop of the workstation. She testified that her legs were short and she was unable to reach the floor when sitting in the chair. However, at no time during the training did plaintiff voice any complaints to her supervisor about the chair or the desk.
7. From 9 January through 18 January 2002, Catherine Garrett supervised plaintiff on the technical training component. Trainees were required to sign-out and punch a time clock on their departure from class each night.
8. On 18 January 2002, plaintiff clocked out at 12:01 a.m. There is no evidence in the record that anyone at the training observed plaintiff limping as she left the classroom area or the building.
9. Plaintiff testified that on 18 January 2002, she experienced severe pain in her right foot and arch as she stood to leave at the end of class. She further contended that she waited until the other 24 trainees left before walking out of the training room, as she did not want them to see her limping.
10. On 20 January 2002, plaintiff sought medical treatment at Rex Hospital emergency room. Plaintiff had x-rays taken of her right foot and ankle, which showed no sign of fracture or dislocation. Plaintiff was diagnosed with plantar fasciitis, an inflammation of the heel pad tissues that attach to the heel bone.
11. On Monday, 21 January 2002, plaintiff came to training on crutches. Ms. Garrett asked her what had happened, and plaintiff said she had injured herself by bracing her foot on the backdrop of the desk. Ms. Garrett referred plaintiff to human resources.
12. On 29 January 2002, Dr. Sarah DeWitt of Raleigh Orthopaedic Clinic examined plaintiff, during which she reported a history of pain in her right ankle for several weeks resulting from sitting at her training class desk. Dr. DeWitt further noted that "She states that she has denied that this is a workman's comp case, but now that she is getting involved in more expense and time and because of the attitude expressed by her employers at work, she wishes to re-open this as a workman's comp case."
13. Dr. DeWitt ordered a bone scan which revealed normal scintigraphy of the right foot and ankle and stress-related phenomena of the left foot and ankle.
14. Plaintiff missed no time out of work as a result of the right ankle pain.
15. By 9 April 2002, plaintiff reported to Dr. DeWitt that she was 98% well and wanted to discontinue therapy.
16. Other than plaintiff's statements noted in the medical records, there is no competent medical evidence to support a finding that plaintiff's right ankle pain was causally related to her employment.
17. The greater weight of the competent and credible evidence in the record supports a finding that plaintiff did not sustain an injury by accident. Furthermore, there is no medical evidence to causally relate the right ankle pain to plaintiff's employment.
 ***********
Based upon the foregoing stipulations and findings of fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. The person claiming the benefits of compensation has the burden of proving the injury complained of resulted from an accident arising out of and in the course of the employment. Henry v. A.C. Lawrence Leather Co.,231 N.C. 477, 57 S.E.2d 760 (1950). Plaintiff did not sustain an injury by accident arising out of and in the course of the employment on or about 18 January 2002 within the meaning of N.C. Gen. Stat. § 97-2(6). Assuming arguendo that plaintiff's duties sitting at a desk during training could be considered new after only ten days and thus sufficient to constitute an injury by accident, plaintiff fails to meet the burden of proof to establish that the condition of which she complained was caused by her employment. Likewise, there is no evidence to support a claim that she contracted a compensable occupational disease.
2. In evaluating expert testimony, the Commission must first determine whether the proffered expert opinion is competent before the opinion can be weighed as evidence in the case. The testimony of a medical doctor is not "competent" merely because it is uttered by a licensed physician. Expert opinion that rests on speculation and conjecture, or on unproven facts, is not sufficiently reliable to qualify as competent evidence concerning the nature and cause of the injury. Young v. Hickory BusinessFurniture, 300 N.C. 277, 538 S.E.2d 912 (2000). In the instant case, there is no competent medical evidence to support plaintiff's claim.
 ***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 ORDER
1. Under the law, plaintiff's claim must be DENIED.
2. Each side shall pay its own costs.
This the ___ day of August, 2003.
 S/___________________ BERNADINE S. BALLANCE COMMISSIONER
CONCURRING:
 S/_____________ PAMELA T. YOUNG COMMISSIONER
 S/_______________ LAURA K. MAVRETIC COMMISSIONER