***********
The Full Commission reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Donovan and the briefs and oral arguments before the Full Commission. The appealing party has shown good ground to reconsider the evidence. Accordingly, the Full Commission reverses the Opinion and Award of Deputy Commissioner Donovan and enters the following Opinion and Award.
 ***********
The Full Commission finds as a fact and concludes as a matter of law the following, which were entered into by the parties as:
 STIPULATIONS *Page 2 
1. On 21 February 2008, the date of the alleged injury by accident, the parties hereto were subject to and bound by the provisions of the North Carolina Workers' Compensation Act and the Industrial Commission has jurisdiction over the subject matter of this case.
2. On the date of the alleged injury by accident, an employee-employer relationship existed between plaintiff and defendant-employer.
3. On the date of the alleged injury by accident, defendant-employer was insured by defendant-carrier Wausau Insurance Company.
4. Plaintiff's average weekly wage is $67.96 yielding a compensation rate of $45.30 per week.
 ************ EXHIBITS
1. The parties stipulated the following documentary evidence:
 a. Stipulated Exhibit #1: I.C. Forms, medical records, discovery responses
2. In addition to Stipulated Exhibit(s), the following Exhibits were admitted into evidence:
 a. Plaintiff's Exhibit #1: Photograph, 2/26/08
 b. Defendants' Exhibit #1: Written statement of April Durham
 c. Defendants' Exhibit #2: Photograph
 d. Defendants' Exhibit #3: Written statement of Nicole Horne
 ************
Based upon all of the competent evidence of record and reasonable inferences flowing therefrom, the Full Commission makes the following:
 FINDINGS OF FACT *Page 3 
1. At the time of the hearing before the deputy commissioner plaintiff was 44 years old. She began her employment with defendant-employer in approximately October 2007. On 21 February 2008, plaintiff was assigned to after school tutoring for first and second grade at Washington Elementary School in Greensboro, North Carolina. Plaintiff's job duties consisted of taking the children to the bathroom and maintaining order in the classrooms.
2. On 21 February 2008, plaintiff's last day of her assignment as a tutor for Washington Elementary School, following a general announcement over the loud speaker at the school noting that it was time to dismiss the after school students from care, plaintiff returned to her classroom. Plaintiff alleges that she heard sounds of an altercation coming from the boy's restroom and upon entry, discovered two larger students fighting. Plaintiff alleges that while attempting to break up the fight she was punched in the right eye and scratched above her right eyebrow.
3. Plaintiff testified that she sent the boys to catch their bus and did not report the incident to either school officials or representatives of defendant-employer. April Durham, an administrative assistant for defendant-employer, spoke with plaintiff on 29 February 2008 and on March 4, 2008. Plaintiff did not report the incident on either occasion. On 22 February 2008, Nicole Horn, a service coordinator for defendant-employer, spoke with plaintiff about another tutoring job. Ms. Horn spoke with plaintiff again on 29 February 2008. Plaintiff did not mention the alleged incident of being punched in the eye while trying to break up a fight on either occasion. It was not until 19 March 2009 that plaintiff reported the incident to Ms. Durham and Ms. Horn.
4. On 26 February 2008, plaintiff presented to her treating physician, Dr. Michael Norins with a swollen right eye. Plaintiff reported a 36-48 hour history of sudden onset of *Page 4 
painful swelling about the right periorbital region. Plaintiff did not indicate why her eye was swollen. Dr. Norins admitted plaintiff through the emergency room to Moses Cone Hospital for treatment. Dr. Norins did not note a break or abrasion of the skin. A culture was taken of the infection and it was determined to be methicillin resistant staphylococcus aureus (hereafter MRSA). Plaintiff was admitted to the hospital and was treated with various antibiotics. She remained hospitalized through 29 February 2008. Dr. Norins was not able to form an opinion as to the cause of the infection.
5. While plaintiff testified that she reported the alleged incident to Dr. Norins' nurse and that the nurse wrote it down on her in-take sheet, Dr. Norins' office does not have an in-take sheet. Plaintiff also testified that Dr. Norins did not perform physical examination and that when he first saw her on 26 February 2008 he stated, "What the hell happened to you?" However, Dr. Norins performed a thorough physical examination on 26 February 2008, and Dr. Norins testified it would have been out of character for him to speak to a patient in a way described by plaintiff.
6. Dr. Norins explained that the MRSA bacteria, as well as many other strains, lives on the body and does not cause infection until it can enter the blood system through a break in the skin. He further noted that once a person has a colony of this bacteria living on their skin or in nasal passages, successful treatment of a specific infection would not necessarily eradicate the colony entirely. The colony could merely continue to live outside the body and wait for another opportunity to enter through a break in the skin.
7. Following plaintiff's release from the hospital, she developed gastrointestinal issues. Plaintiff presented to Dr. Norrins on 4 March 2008 for treatment of this condition. Dr. Norrins was unable to state whether there was a causal connection between the current problems *Page 5 
and the antibiotic treatment plaintiff received from the infection, and was only able to note that it was "a possibility that was not ruled out." On this same date, plaintiff reported concern about having had small furuncles and abscesses over the past year. Plaintiff also admitted that she manipulates the furuncles and abscesses.
8. On 11 March 2008, plaintiff presented to Dr. Norins with diffuse myalgia complaints that he diagnosed as fibromyalgia. Dr. Norins testified that fibromyalgia "is a poorly understood syndrome that we don't really have a good idea exactly where it originates, what its cause is." Again, he was unable to establish a causal connection between plaintiff's previous infection and the myalgia or offer an opinion to any degree of medical certainty as to the etiology of plaintiff's myaligia complaints. Ms. Hedgecock, PA-C, who provided treatment for plaintiff for a number of ailments, opined that plaintiff's myalgia complaints were caused by an unrelated knee injury and were not related to the MRSA hospitalization.
9. On 18 May 2008, plaintiff was admitted to Moses Cone Hospital and found to have developed a second MRSA infection. It was noted at the time of her admission that plaintiff had squeezed a pimple on her check that had provided an entry point for the bacteria and developed into an infected area. Plaintiff was admitted to the hospital and remained hospitalized through 24 May 2008. She was released to return to work on 30 May 2008.
10. At the request of defendant-carrier, plaintiff provided a copy of Dr. Norins' 26 February 2008 note which contained a statement that had been blacked out. According to Dr. Norins, the complete statement which had been partially blacked out would read, "concerned for MRSA infection, with the patient having had previous MRSA infection. Dr. Norins testified that he would never alter an existing medical record, but would create an addendum. Therefore, the medical record provided by plaintiff had been redacted by someone other than Dr. Norins. *Page 6 
11. In addition, according to notes dated 31 March 2008 from Rafeael Smith with defendant-carrier, plaintiff was refusing to provide defendant-carrier with her previous medical records so it could make a compensability decision.
12. The Full Commission finds that plaintiff's testimony is inconsistent and thus not credible. Based upon the greater weight of the credible evidence, plaintiff has failed to show that she suffered an injury by accident on 21 February 008 as alleged.
13. Since May 2008, plaintiff has been earning $104.00 a week working as a pet nutritionist with Nutro Products, where she is currently employed.
 ************
Based upon the foregoing stipulations and findings of fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. The person claiming the benefit of compensation has the burden of showing that the injury complained of resulted from an injury by accident arising out of and in the course of employment.Henry v. Leather Co., 231 N.C. 477, 57 S.E.2d 760 (1950). Plaintiff failed to prove that she sustained a compensable injury by accident arising out of and in the course of the employment on 21 February 2008. N.C. Gen. Stat. § 97-2(6).
2. As plaintiff has failed to prove that she sustained a compensable injury by accident, plaintiff is not entitled to receive indemnity or medical benefits. Id.; Henry,231 N.C. 477, 57 S.E.2d 760 (1950).
 ************
Based upon the foregoing stipulations, findings of fact, and conclusions of law the Full Commission makes the following: *Page 7 
 AWARD
1. Plaintiff's claim is hereby DENIED.
2. Each side shall bear its own costs.
This the 22nd day of December 2009.
S/___________________ STACI T. MEYER COMMISSIONER
CONCURRING:
 S/___________________ BERNADINE S. BALLANCE COMMISSIONER
 S/___________________ DANNY L. McDONALD COMMISSIONER *Page 1